Las Monjas Racing Corporation y Quintana Racing Park, Inc., demandantes y apelantes, *v.* Comisión Hípica Insular de Puerto Rico y sus miembros F. J. Richardson, Mariano Abril, Antonio Arroyo y Pedro J. Barbosa, demandados y apelados.

No. 5217.—*Sometido:* Marzo 9, 1933. *Resuelto:* Noviembre 23, 1933.

*Leopoldo Feliú* y *M. Martínez Dávila,* abogados de las apelantes, respectivamente; *J. Martínez Dávila,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Las demandantes entablaron esta acción para impedir que se pusiese en vigor una orden fijando en 25 centavos el precio de ciertos impresos conocidos con el nombre de papeletas, cantidad que incluía el costo de la combinación, a más del impuesto de 1 centavo determinado por la ley, y prohibiendo la venta de papeletas a un precio mayor que el total máximo así prescrito. Después que los demandados contestaron, el caso fué sometido por las alegaciones y la corte de distrito desestimó la acción.

██ █ Una papeleta se utiliza para hacer una sola combinación. Un número de diferentes combinaciones puede jugarse en otros impresos conocidos con el nombre de cuadros. Una combinación es una lista contentiva de tantos caballos como carreras haya en un programa oficial. Se escoge un caballo de entre los que han de tomar parte en cada carrera. El jugador ingresa en el *pool* 25 centavos por cada combinación que juegue. Por muchos años anteriores a una fecha no especificada, que en la demanda se alegaba como reciente, los hipódromos habían venido vendiendo cuadros en blanco y distribuyendo papeletas libre de costo. El adquirente de un cuadro en blanco, en adición al precio pagado por el impreso, ingresaba en el *pool* 25 centavos por cada combinación. El jugador de una papeleta asimismo contribuía con 25 centavos al fondo del *pool* por su combinación, mas nada pagaba por el blanco. Ahora el *pool* consiste, y siempre ha consistido, del total pagado por todos los jugadores a razón de 25 centavos por cada combinación.

La sección 15 de la Ley Hípica (No. 40 de 1927, pág. 207) según fué enmendada por la Legislatura en su sesión ordinaria de 1929 (Leyes de ese año, página 245) disponía: "que los

impresos para el juego de combinaciones en el *pool* deberán venderse por las corporaciones explotadoras de los hipódromos a cinco (5) centavos cada uno, y el producto de la venta de tales impresos, después de descontar dos (2) centavos para gastos de impresión y venta de los mismos, por impreso, deberá ingresar en el Tesoro Insular para ser invertido por el Comisionado de Sanidad en la profilaxia de la tuberculosis en los niños.''

Antes de empezar a regir esa enmienda, sin embargo, la sección 15 fué nuevamente enmendada en la sesión extraordinaria del mismo año y la disposición que acabamos de copiar fué omitida. Al mismo tiempo la sección 40 fué enmendada (Leyes de la sesión extraordinaria, páginas 23, 25) para que leyera en parte así:

"Los impresos de combinaciones para el juego de *pool* sólo podrán sellarse en los días que se celebren carreras de caballos y en relación con éstas, en aquellos locales, radicados dentro de los hipódromos de la Isla donde hayan de verificarse las carreras para las cuales se destinen dichos impresos. . . . . . Los impresos en blanco para el juego de tales combinaciones podrán expedirse y venderse en cualquier parte por las personas o entidades que estén autorizadas por las asociaciones, corporaciones o personas dueñas o explotadoras de tales hipódromos; *Disponiéndose*, que se entenderán por impresos para el juego del *pool*, tanto las papeletas donde se juega una sola combinación como los cuadros donde se pueden jugar una o más combinaciones. Las papeletas se venderán a veinticinco centavos cada una, más un centavo adicional como impuesto; *Disponiéndose, además,* que por cada impreso de los llamados cuadros, cuyo precio se fija en cinco centavos, se cobrarán otros cinco centavos en concepto de impuesto. Estos impuestos serán cobrados por la asociación, corporación o persona explotadora o dueñas de los hipódromos, y los impuestos así cobrados, de acuerdo con el número de papeletas y cuadros que resulten sellados, según la liquidación oficial del *pool*· en cada día de carreras, ingresará en el Tesoro Insular a disposición del Comisionado de Sanidad y para ser por éste invertida en la profilaxis de la tuberculosis en los niños, en la forma y manera que estime conveniente.''

Es obvio que el fin primordial de esta legislación era levantar fondos mediante tributación para prevenir la tubercu-

losis en los niños. En cuanto al pensamiento que predominó en la mente del legislador, y en lo que respecta a la cantidad de la contribución y' a la carga proporcional que había de llevar la persona que apostara una sola combinación o la que apostase una serie de combinaciones, la fraseología es perfectamente clara. La confusión sólo surge en lo concerniente a la cuestión de si el que juega una sola combinación debe pagar, además de la contribución impuéstale, el doble de lo que ha de pagar por cada combinación el jugador de una serie de combinaciones. Aquí el lenguaje usado por la Legislatura debe interpretarse a la luz de condiciones preexistentes y de una costumbre arraigada.

Por muchos años el jugador de una serie de combinaciones y el que apostaba una sola combinación habían contribuído en forma similar con la cantidad de 25 centavos por cada combinación. El jugador de una serie de combinaciones siempre había pagado algo por su cuadro en blanco. El jugador de una sola combinación jamás había pagado por su papeleta en blanco. En su sesión ordinaria la Legislatura exigió al jugador de una sola combinación la misma cantidad que al de una serie de combinaciones. Por virtud de los términos de la ley, tal como fué enmendada en la sesión extraordinaria, el jugador de una serie de combinaciones debía pagar un impuesto de 5 centavos, mientras que al que apostara una sola combinación únicamente se le exigió que pagara 1 centavo. Con esto la Legislatura aparentemente tuvo la intención de corregir la injusticia envuelta en la ley que acababa de pasar en su sesión ordinaria haciendo una marcada distinción a favor del jugador de una sola combinación. Eso parece ser razonablemente claro. El hecho de que la Legislatura exigiera del jugador de una sola combinación la quinta parte de la contribución impuesta al jugador de una serie de combinaciones, difícilmente puede armonizarse con la teoría de un propósito coexistente de obligar al jugador de una sola combinación a pagar al hipódromo, como precio de su papeleta en blanco, en primer término, cinco veces lo que el jugador de

una serie de combinaciones debe satisfacer por su cuadro en blanco, y en segundo término, a ingresar en el *pool* la misma cantidad que él había pagado por su papeleta, que por alguna coincidencia extraña, es la misma cantidad que el jugador de una serie de combinaciones debe pagar por cada combinación jugada por él.

El artículo 40 dispone la venta de *cuadros impresos.* Por otra parte, deben venderse *papeletas,* que no son necesariamente *impresas,* a razón de 25 centavos más el impuesto de 1 centavo. Más específicamente, el artículo 40 dispone que: ''se entenderán por impresos para el juego del *pool,* tanto las papeletas donde *se juega* una sola combinación como los cuadros donde *se pueden jugar* una o más combinaciones.'' Por el *cuadro impreso* donde se *puede jugar* una serie de combinaciones es que la persona que apuesta paga 5 centavos a más del impuesto de 5 centavos. Por la papeleta donde *se juega* una sola combinación es que el jugador paga 25 centavos en adición al impuesto de 1 centavo.

Algo que la Legislatura en su sesión extraordinaria sí consideró con respecto al importe del impuesto fué el costo de impresión y venta de los blancos usados para combinaciones del *pool.* El costo de cada impreso fué calculado en 2 centavos. Se dispuso el reembolso de esta cantidad. No se tuvo la intención de que el hipódromo derivara alguna ganancia de la transacción. A base del cálculo hecho en la sesión ordinaria, el hipódromo tendría un beneficio de 3 centavos al vender cada cuadro impreso al precio posteriormente fijado por la Legislatura. No es probable que la misma Legislatura que permitió una ganancia de 3 centavos en la venta de cada cuadro impreso a 5 centavos, en adición al impuesto de 5 centavos, tuviera en mente permitir una utilidad de 23 centavos en la venta de cada papeleta por 25 centavos además del impuesto de 1 centavo. La Legislatura sabía que los hipódromos siempre habían obtenido ganancia en la venta de cuadros impresos. Sabía que ellos siempre habían suministrado las papeletas en blanco gratuitamente. Le constaba que

el jugador que usaba una papeleta siempre había contribuído al *pool* con 25 centavos como el costo total de su combinación. Si la legislatura, teniendo todo esto en mente, hubiese pretendido cobrar a un jugador que usara una papeleta un impuesto de 1 centavo en adición al antiguo costo de su combinación, y entonces permitir al hipódromo cobrarle, en primer término, 25 centavos como el precio de su papeleta en blanco, y en segundo término, después de apropiarse esta cantidad para sí, otros 25 centavos como su contribución al *pool,* nos sentimos obligados a resolver que esa intención hubiera sido más claramente expresada.

No podemos decir que la corte de distrito erró al interpretar la ley como la interpretó la comisión hípica en su resolución de octubre 28, 1929.

*Debe confirmarse la sentencia apelada.*